IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DERWIN DOUGLAS, #314107 | § | |
| VS. | § | CIVIL ACTION NO. 6:17cv347 |
| LORIE DAVIS, ET AL. | § | |

<u>ORDER OF DISMISSAL</u>

Plaintiff Derwin Douglas, an inmate confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, brings this civil rights lawsuit challenging the conditions of his confinement pursuant to 42 U.S.C. § 1983. United States Magistrate Judge K. Nicole Mitchell, to whom the case had been referred, issued a Report and Recommendation ("R&R") concluding that the case should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). (Dkt. #26). Mr. Douglas has filed objections. (Dkt. #31). After conducting a *de novo* review of the record, the pleadings, and the paper on file, the court concludes that the R&R is correct and the objections lack merit.

**Procedural History and Factual Background**

Mr. Douglas' amended complaint (Dkt. #10) contains numerous very broad and vague claims. The Court will discuss each claim *seriatim*.

Mr. Douglas alleges that conditions of confinement in the main housing block of the Coffield Unit violate the Eighth Amendment's prohibition against cruel and unusual punishment. He initially complains about extreme heat and contaminated water. He states that he is bringing these claims in light of *Keith Cole v. Brad Livingston*, No. 4:14cv1698 (S.D. Tex.).

Mr. Douglas next complains that he must share a 45 square foot cell, which purportedly violates the orders issued in the *Ruiz* class action lawsuit. *See Ruiz v. Lynaugh*, 811 F.2d 856 (5th Cir. 1987). He asserts that the overcrowded conditions cause negative physical and psychological effects, spread diseases, and increases stress, tension, anxiety, hostility, and depression. He asks that the double-celling of inmates in a 45 square foot cell be declared unconstitutional and that an injunction be issued requiring all cells at the Coffield Unit be single-cell housing.

Mr. Douglas also complains about sleep deprivation. He explains that the Coffield Unit no longer has rack-time status and that it is operational continuously 24 hours. He stresses that the guards are always slamming the doors, and he is deprived of sleep due to noise. He also notes that he suffers from chronic fatigue.

Mr. Douglas next complains that there are no toilets in the general population living areas.

Mr. Douglas then repeats his complaints about extreme heat. He observes that the outer walls consist of window panes from the floor to the ceiling. The cell front consists of metal bars covered by iron grates painted black. The sunlight shines into the cell and there is no escaping the heat.

Mr. Douglas also repeats his complaint about contaminated drinking water. He asserts that the water is infected with the *H.Pylori*[1] virus.

In addition to complaints about extreme heat, Mr. Douglas also complains about extreme cold in the winter months. Once again, he notes that there are several hundred window panes in

---

[1] *H. Pylori* is identified as a water-borne bacterium. *See*, www.webmd.com/digestive-disorders/h-pylori-helicobacter-pylori#1, lasted visited October 12, 2017.

the housing areas. He asserts that the windows are not properly sealed and the heating system is inadequate.

Mr. Douglas complains that the chow hall is contaminated and filthy. He asserts that roaches and birds infest the chow hall year-round. He adds that food servers and food managers do not wear proper headgear and gloves. Food residue remains on utensils. He claims he must walk in sewer water on the floor. He asks that the Defendants be ordered to ensure that he is free from contamination.

Mr. Douglas finally alleges that the housing and living areas are unsafe. He explains that all iron fixtures and furniture have no sealant and paint in many areas; thus, inmates are exposed to rust.   He adds that black spores and fungus exists in the living area ceiling cracks and showers. There are no climbing implements in the housing area to accommodate accessibility to top bunks. He also complains that inmates are smoking the synthetic drug K2. He complains that inmates are forced to live with other inmates who are known to be violent and assaultive. He asks that the Defendants be ordered to ensure that he is free from health and safety risks and assaults.

Mr. Douglas seeks declaratory and injunctive relief, along with compensatory and punitive damages. With respect to injunctive relief, he asks that the Defendants be ordered to "obey current policies in place that protects the health and safety of Plaintiff and ensure Plaintiff is free of extreme temperature, contamination, health and safety risks, and assaults." (Dkt. #22, page 12).

Mr. Douglas states that he is suing TDCJ Executive Director Bryan Collier because he has "subjected Plaintiff to inhumane conditions, he is aware of the risks and dangers and failed to correct them when he has a duty to do so." (Dkt. #22, page 3). He is suing TDCJ-CID Director Lorie Davis because she "has custody and control of Plaintiff while subjecting him to inhumane

conditions that is in violation of the Eighth Amendment rights against cruelty." *Id.* He is suing Senior Warden Jeffrey Catoe because he "has failed to protect the security, health and safety of Plaintiff by exposing Plaintiff to inhumane conditions." *Id.* He is suing Assistant Wardens Jeffrey Richardson and P. Cooper for "acting as an agent to the unconstitutional inhumane conditions by enforcing unsafe and health risks conditions upon Plaintiff." *Id.* He states that he is suing each defendant in their individual and official capacities.

### Preliminary Screening

Mr. Douglas is an inmate confined in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As was previously noted, the Magistrate Judge found that Mr. Douglas' claims are frivolous.

**Discussion**

**I.       Some of Mr. Douglas' claims are barred by lack of subject matter jurisdiction.**

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*"). The Federal Rules of Civil Procedure require this court to dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

**A.       Mr. Douglas' claim for money damages against the Defendants in their official capacities is barred by the Eleventh Amendment.**

Mr. Douglas sues Defendants TDCJ-CID Director Lorie Davis, TDCJ Executive Director Bryan Collier, Warden Jerry Catoe, Assistant Warden Jeffrey Richardson, and Assistant Warden Brian Cooper in both their individual and official capacities. Among other things, he seeks relief in the form of monetary damages.

When a plaintiff files suit against State officials in their official capacities, in effect, he is bringing suit directly against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), *cert. denied*, 565 U.S. 1079 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because

such a suit is actually one against the state itself"). Since the State has not consented to suit, in as far as Mr. Douglas filed suit against Defendants for monetary relief in their official capacities, Defendants are shielded from this claim via the Eleventh Amendment. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citations omitted). Mr. Douglas' claims seeking money damages from Defendants in their official capacities should be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B.      Mr. Douglas' claims for prospective injunctive relief should be dismissed.**

In his amended complaint, Mr. Douglas moves for prospective injunctive relief for this Court to order the individual Defendants in their official capacities to:

(1)      cease all double-celling at the Coffield Unit; and

(2)      to obey current policies in place that protects the health and safety of Mr. Douglas and ensure Mr. Douglas is free of extreme temperature, contamination, health and safety risks and assaults.

Mr. Douglas also requests that the Court appoint a special master to ensure that the Defendants comply with all orders in connection with this complaint. For reasons hereinafter explained, Mr. Douglas' requests for prospective injunctive relief should be dismissed for mootness and lack of standing.

**1.      Mr. Douglas' official capacity claims against Warden Cooper should be dismissed for lack of redressability.**

In his amended complaint, Mr. Douglas asserts that he is suing Assistant Warden Cooper but Warden Cooper has been recently promoted to Head Warden of another prison within TDCJ-CID. As Warden Cooper is no longer a warden at the Coffield Unit, he no longer has any authority to effectuate the prospective injunctive relief requested by Mr. Douglas.

*Ex parte Young*, 209 U.S. 123 (1908), and its progeny allow a narrow exception to Eleventh Amendment immunity in claims against State officials for prospective injunctive relief. *Id*. at 159–60; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985); *Edelman v. Jordan*, 415 U.S. 651, 666–68 (1974). Nevertheless, Mr. Douglas must first demonstrate that he meets the elements of Article III standing. Any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional power, and (2) the demonstrated willingness of the official to enforce the statute. *Okpalobi v. Foster*, 244 F.3d 405, 425–27 (5th Cir. 2001). Moreover, the Fifth Circuit pointed out that a State official cannot be enjoined to act in any way that is beyond his authority to act in the first place. *Id*. at 427. Since Warden Cooper is no longer at the Coffield Unit, Mr. Douglas fails to state facts demonstrating that Warden Cooper has the ability to redress Mr. Douglas' alleged injuries at the Coffield Unit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (citing *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 38, 43 (1976)). As such, Mr. Douglas' claims against Warden Cooper in his official capacity be dismissed for lack of redressability.

## 2.      Mr. Douglas' claims regarding high summertime temperatures fail to state a claim.

Mr. Douglas complains about high summertime temperatures.   This case is yet "another chapter in a long saga of challenges to conditions of confinement" exposing prisoners to "high temperatures in the prison housing areas." *Yates v. Collier*, 868 F.3d 354, 358 (5th Cir. 2017). The Constitution "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions

that "pos[e] a substantial risk of serious harm." *Id.* at 834. He must also allege facts showing that

prison officials were deliberately indifferent to his health or safety. *Id.* The Fifth Circuit has held

that the mere fact that an inmate is confined in an uncomfortably hot cell does not, standing alone,

provide a basis for a potentially meritorious lawsuit. *See Woods v. Edwards*, 51 F.3d 577, 581 (5th

Cir. 1995). "Without the requisite proof of both subjective and objective components of an Eighth

Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect

'a basic human need that the prison has failed to meet' and is not constitutionally suspect." *Ball v.

LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (citing *Woods*, 51 F.3d at 581). The court observes

that there has been litigation in recent years about extreme heat in the prison environment, although

cases have distinguished between healthy inmates and heat sensitive or disabled inmates. *See, e.g.*,

*Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016). Mr. Douglas

cites *Cole*, but he has not shown that he fits into the category of heat sensitive or disabled inmates

covered by that case.

Although exposure to extreme heat is actionable under some circumstances, Mr. Douglas'

allegations fall short of what is required to establish a constitutional violation. For example, in

*Johnson v. Tex. Bd. of Criminal Justice*, 281 F. App'x 319 (5th Cir. 2008), the Fifth Circuit

concluded that the plaintiff's allegations regarding extreme heat were "not sufficient to state a

constitutional claim" because, although the plaintiff alleged that the temperatures were "sometimes

uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being

subjected to these conditions numerous times." *Id*. at 321; *see also, Ventry v. Gusman*, 2012 WL

1405862, *4, *7 (E.D. La. Mar. 29, 2012). Similarly, it has been held that conclusory claims of

excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional

right. *See Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. Mar. 29, 2012) (citing *Johnson v. Thaler*, 1999 WL 1131941 *1 (5th Cir. Nov. 12, 1999) (noting that plaintiffs' "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944 *2 (5th Cir. May 6, 1994) (dismissing as frivolous the plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate")). Mr. Douglas has failed to state a claim that rises to the level of a constitutional violation as it relates to summertime heat. As such, his prospective injunctive relief claim regarding excessive heat be dismissed for failure to state a claim.

### 3. Mr. Douglas' claim regarding the drinking water at the Coffield Unit fails to state a claim.

Mr. Douglas also complains about the water, which he characterizes as contaminated.   He asserts that the water is infected with the *H.Pylori* virus. As with the previous claim, he states that his claim is based on *Cole*. He does not allege facts providing any details to support his claim that the water is contaminated.

This court takes judicial notice of the Fifth Circuit's statements in *Yates v. Collier*, 677 F. App'x 915 (5th Cir. 2017). Contrary to Mr. Douglas' belief regarding the safety of the drinking water at the Coffield Unit, the Fifth Circuit notes that "[t]he Pack Unit was, as of last summer [2016], the only Texas prison unit serving water that violates the EPA's current arsenic-related guidelines. And the TDCJ has assured us that, by next summer [2017], the Pack Unit will enjoy 'a new filtration system' that will ensure these violations do not recur." *Id.* at 917. Based on the evidence before the Fifth Circuit, the Coffield Unit does not and did not share the same issues with the Pack Unit regarding its water quality under EPA guidelines.

Mr. Douglas' allegations in this case are entirely conclusory, and he provides no factual basis whatsoever upon which the court might plausibly conclude that he has stated a claim for relief. His mere personal belief that the water at Coffield Unit is contaminated is not sufficient to support a claim before this court. *See Rougley v. GEO Group*, No. 2:10-cv-1094, 2011 WL 7796488 (W.D. La. Nov. 7, 2011) (dismissing an inmate's claim as frivolous where the inmate provided only conclusory assertions, without supporting facts, that the food served at the prison was contaminated). *See also McIntosh v. Brighton*, 2014 WL 1584173 *2 n.1 (E.D. Mich. Apr. 21, 2014) (dismissing an inmate's claim as frivolous where her allegations of contaminated water were conclusory and she failed to "set forth any specifics, such as . . . why she believe[d] the drinking water was contaminated"). Accordingly, based on the complete absence of any apparent factual basis for Mr. Douglas' claim of contamination, the claim should be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted. Moreover, Mr. Douglas' claim for prospective injunctive relief requesting that the offender population be supplied with uncontaminated drinking water that meets all EPA standards should be dismissed for failure to state a claim. The Fifth Circuit has held that a general injunction which in essence orders a defendant to obey the law is not permitted. *See Sec. & Exch. Comm'n v. Life Partners, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017).

In his objections, Mr. Douglas asserts that he should be permitted to conduct discovery with respect to his claims for prospective injunctive relief. However, since his request for prospective injunctive relief lacks merit, there is no basis for allowing discovery on this issue.

II.     **Mr. Douglas fails to state a claim upon which relief may be granted as to the individual Defendants in their individual capacities.**

In his amended complaint, Mr. Douglas is suing each prison official because of the position they hold, *e.g.*, Executive Director, Director, Senior Warden and Assistant Wardens. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d at 793. Defendants were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). More recently, the Supreme Court recently held that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id*. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d at 303-304.   Mr. Douglas has not alleged facts showing that any Defendant was personally involved in denying him his constitutional rights. At most, he has alleged nothing more than they were aware of the risks. His claim is purely speculative and does not save it from dismissal. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013).

Explaining further, supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy itself is a repudiation of constitutional rights' and is "the moving force of the constitutional violation.'" *Id*. at 304 (quotations omitted). In order to establish a claim for governmental liability

under § 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694-95. Mr. Douglas has not alleged facts that satisfy this standard. Instead, he essentially alleges that because they held supervisory roles, then *ipso facto* they must be liable. His attempt to establish the Defendants' liability through vicarious liability is unavailing. *See Birdwell v. Livingston*, 327 F. App'x 457, 459-60 (5th Cir. 2009) (no liability in the absence of personal knowledge on the part of officials).

Mr. Douglas' claims against Executive Director Bryan Collier, TDCJ-CID Director Lorie Davis, Senior Warden Jeffery Catoe, Assistant Warden Brian Patrick Cooper, and Assistant Warden Jeffery Richardson in their individual capacities fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## III.     Mr. Douglas' individual complaints fail to state a claim upon which relief may be granted.

In addition to failing to allege any facts that show that any named defendant was personally involved in his alleged violations of constitutional rights, Mr. Douglas' specific complaints about prison conditions at the Coffield Unit fail to rise to the level of a constitutional violation. Mr. Douglas raises wide-ranging complaints about excessive heat, overcrowding, double-celling, cleanliness and sanitation of the cells, dayrooms, and chow hall, broken windows, etc. Despite this extensive list, Mr. Douglas does not state any actual injury he has sustained from these conditions; other than chronic fatigue.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard for determining whether conditions are cruel and unusual "must draw its meaning from

the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). Conditions "alone or in combination" may amount to a constitutional violation. *Rhodes*, 452 U.S. at 347. In his objections, Mr. Douglas erroneously complains that the Magistrate Judge did not acknowledge that the "combined effects" of the alleged claims may constitute cruel and unusual punishment, but the Magistrate Judge properly cited *Rhodes* for the proposition that conditions "alone or in combination" may amount to a constitutional violation. *Id.*

The Constitution does not require that prisoners be provided with every amenity, but inmates must be furnished with the basic necessities of life, which includes reasonably adequate food, clothing, shelter, sanitation, medical care and personal safety. *See Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977). "[P]rison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Sanford v. Brookshire*, 879 F.Supp. 691, 693 (W.D. Tex. 1994). The Constitution "forbids deprivation of the basic elements of hygiene." *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983). However, as the Supreme Court emphasized in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. *See also, Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) ("[i]t is well settled that 'the Constitution does not mandate comfortable prisons,' and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment." *Id.* (quoting *Rhodes*, 453 U.S. at 347, 349)); *Alberti v. Sheriff of Harris Cnty.*, 937 F.2d 984, 998 (5th Cir. 1991), *cert. denied sub nom.*, *Richards v. Lindsay*, 504 U.S. 930 (1992).

13

"To succeed on his conditions-of-confinement claim, [Plaintiff] must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference." *See Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009) (citing *Farmer*, 511 U.S. at 825)); *see also Hernandez*, 522 F.3d at 560. "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measures of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir.1999) (internal quotation marks and citation omitted). "[E]xtreme deprivations are required" in order to meet the objective component of a conditions-of-confinement claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir.1998). In order to satisfy the subjective component, the prisoner must establish that the defendants "acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir.1999) (footnote omitted). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rhodes*, 452 U.S. at 347; *Farmer*, 511 U.S. at 832.

In addition to examining Mr. Douglas' complaints within the Eighth Amendment conditions of confinement context, the Court must also be cognizant of the application of Prison Litigation Reform Act to Mr. Douglas' claims. The court notes that 42 U.S.C. § 1997e(e) bars claims for compensatory damages in the absence of a physical injury. The Fifth Circuit "has held that § 1997e(e) prevents a prisoner who has not alleged a physical injury from seeking compensatory damages." *Samford v. Staples*, 249 F. App'x 1001, 1002 (5th Cir. 2007) (citing *Harper*, 174 F.3d at 719).

A.    **Heat Conditions**

Mr. Douglas states that he is bringing his claim about extreme heat conditions at the Coffield Unit in light of *Cole v. Livingston.* He specifically states that the outer walls consist of window panes from the floor to the ceiling. The cell front consists of metal bars covered by iron grates painted black. The sunlight shines into the cell and there is no escaping the heat.

The Court previously observed on pages 7-8 of this Order that Mr. Douglas' complaints about the heat, without more, fail to implicate a federal constitutional right. Mr. Douglas cites *Cole*, but that case distinguished between healthy inmates and heat sensitive or disabled inmates. *Cole*, 2016 WL 3258345, at *1-2. He has not shown that he fits into the category of heat sensitive or disabled inmates covered by that case.

Mr. Douglas queries in his objections whether he must suffer a heat stroke or heart attack in order to bring a claim about the heat. The distinction between healthy inmates and heat sensitive inmates relates to the requirement of a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Mr. Douglas does not have a basis for a deliberate indifference claim in the absence of facts showing that he faces a substantial risk of serious harm, as opposed to being just uncomfortable. Overall, the facts as alleged fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The heat claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B.    **Contaminated Water**

Mr. Douglas also complains about the water, which he characterizes as contaminated. As with the previous claim, he states that his claim is based on *Cole*. He does not allege facts providing any details to support his claim that the water is contaminated.

The Court once again takes notice of the Fifth Circuit's statements in *Yates*, 677 F. App'x at 917. Contrary to Mr. Douglas' belief regarding the safety of the drinking water at the Coffield Unit, the Fifth Circuit notes that "[t]he Pack Unit was, as of last summer [2016], the only Texas prison unit serving water that violates the EPA's current arsenic-related guidelines. And the TDCJ has assured us that, by next summer [2017], the Pack Unit will enjoy 'a new filtration system' that will ensure these violations do not recur." *Id.* Based on the evidence before the Fifth Circuit, the Coffield Unit does not and did not share the same issues with the Pack Unit regarding its water quality under EPA guidelines. Mr. Douglas' allegations in this case are entirely conclusory, and he provides no factual basis whatsoever upon which the Court might plausibly conclude that he has stated a claim for relief.

In his objections, Mr. Douglas states that he has affidavits from inmates who have contracted the *H. Pylori* virus from the water. His objections do not allege that he has suffered a physical injury, which is a basic requirement to proceed in a civil rights lawsuit under 42 U.S.C. § 1997e(e). *See Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001) (inmate is precluded from obtaining monetary damages as a matter of law in the absence of a physical injury).

The facts as alleged fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The contaminated water claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## C.   <u>Double-Celling</u>

Mr. Douglas next complains that he must share a 45 square foot cell, which purportedly violates the orders issued in the *Ruiz* class action lawsuit. He asserts that the overcrowded conditions cause negative physical and psychological effects, spread diseases, and increases stress,

tension, anxiety, hostility, and depression. He asks that the double-celling of inmates in a 45 square foot cell be declared unconstitutional and that an injunction be issued requiring all cells at the Coffield Unit be single-cell housing.

Despite Mr. Douglas' generalized allegation that the Coffield Unit is overcrowded, "[o]vercrowding of persons in custody is not *per se* unconstitutional." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (citing *Rhodes*, 452 U.S. at 347–50)); *see also Krause v. Leonard*, 352 F. App'x 933, 936 n.10 (5th Cir. 2009) (citing *Rhodes*, 452 U.S. at 348) (overcrowding by placing three men in a two-man cell or by double-celling inmates does not violate the Eighth Amendment)). To the extent that the conditions of which Mr. Douglas complains "are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Furthermore, as much as Mr. Douglas complains about the near quarters, he has not suffered or alleged actual injury as required for a § 1983 claim. *Lemons v. Swann*, 412 F. App'x 672, 673 (5th Cir. 2011).

Although Mr. Douglas complains at length about double-celling, the Supreme Court has stated that the double-celling of prisoners, even in relatively small cells, does not amount to cruel and unusual punishment. *Rhodes*, 452 U.S. at 347–50; *see also Duncan v. Puckett*. 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27, 1996) (upholding dismissal as frivolous of inmate's complaint of being placed in a single cell with another prisoner); *Lineberry v. United States*, No. 5:08cv72, 2009 WL 499763 (E.D. Tex. Feb. 27, 2009), *appeal dismissed as frivolous*, 436 F. App'x 293, 2010 WL 7114190 (5th Cir. June 3, 2010) (rejecting complaint of double-celling at the Federal Correctional Institution at Texarkana)). To the extent that Mr. Douglas complains that double-

celling and the small quarters causes stress, there is no right to a stress-free environment while incarcerated. *Cupit v. Jones*, 835 F.2d 82, 84 (5th Cir. 1987).

Finally, to the extent that Mr. Douglas claims that the two-man cells at the Coffield Unit violates *Ruiz*, his assertion is erroneous since the Fifth Circuit vacated the district court's order and found that double-celling is not cruel and unusual punishment. *Ruiz v. Estelle*, 679 F.2d 1115, 1150-51 (5th Cir. 1982) (citing *Rhodes*, 452 U.S. at 346). In his objections, Mr. Douglas again focuses on the trial court's decision in *Ruiz* banning double-celling, but he once again ignores the Fifth Circuit's decision reversing the trial court's decision. His objections lack merit. Mr. Douglas' complaint regarding double-celling fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The double-celling claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### D.     Sleep Deprivation

Mr. Douglas also complains about sleep deprivation. He explains that the Coffield Unit no longer has rack-time status and that it is operational continuously 24 hours. He stresses that the guards are always slamming the doors, and he is deprived of sleep due to noise. He also notes that he suffers from chronic fatigue.

In *Chavarria v. Stacks*, 102 F. App'x 433, 2004 WL 1485076 (5th Cir. July 20, 2004), plaintiff Juan Chavarria complained that bright fluorescent lights and light bulbs illuminated his cell 24 hours a day, making it impossible for him to sleep. The district court rejected this claim and the Fifth Circuit affirmed. The Fifth Circuit observed first that the Constitution does not mandate comfortable prisons and stated that even were it assumed that Chavarria alleged conditions sufficiently serious to be cognizable under the Eight Amendment, he failed to establish

an Eighth Amendment violation because he did not show that the claimed deprivation was unnecessary and wanton.

In this case, the sleep disturbances of which Mr. Douglas complains are part of the normal prison routine. He offers nothing to show that slamming doors and noise are done in an unnecessary and wanton manner to prevent him from sleeping, nor is it clear how such conditions could be eliminated without a large-scale disruption if not a complete revamping of the operations of the prison. He has failed to show an Eighth Amendment violation. Mr. Douglas' sleep deprivation claim fails to state a claim and is frivolous in that it lacks any basis in law and fact. Mr. Douglas' sleep deprivation claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E.     Lack of Toilets

Mr. Douglas complains next that there are no toilets in the general population living areas, such as in the day rooms. In *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999), a TDCJ inmate complained that he was not allowed to use a bathroom during the seventeen-hour outdoor confinement and was instead told that his only option was to urinate and defecate in the confined area that he shared with forty-eight other inmates. The Fifth Circuit held that a complete deprivation of toilets for scores of inmates in the same small area constituted cruel and unusual punishment under the Eighth Amendment because it amounted to a "deprivation of basic elements of hygiene." *Id.; see also Tawe v. Roesler*, No. H-17-3404, 2018 WL 1609579, at *5-6 (S.D. Tex. Apr. 2, 2018) (same).

The Fifth Circuit dealt with the issue of no toilets again in *Alexander v. Tippah Cnty., Mississippi*, 351 F.3d 626 (5th Cir. 2003). The facts in *Alexander* reveal that the two inmates were placed in a cell that had no running water nor toilet facilities. The only sanitary facility was a grate-

covered hole in the floor, which had to be "flushed" from outside the room. *Id*. at 627. Inmate Carroll developed an upset stomach and had to defecate into the floor drain. He was given only one sheet of toilet paper in which to clean himself. The feces from both inmates obstructed the hole and they attempted to push the feces down the hole with a piece of paper plate, which further obstructed the hole. They subsequently attempted to urinate, but the clogged drain caused the urine to splatter onto the cell floor. Carroll eventually became nauseated from the smell and vomited into the drain. The Fifth Circuit declined to decide whether holding the two inmates in the cell for twenty-four hours violated their Eighth Amendment rights. *Id*. at 631. The Fifth Circuit, instead, found that the inmates were not entitled to relief as a matter of law because their physical injuries, consisting of nothing more than nausea, were *de minimis*. *Id*. They did not sustain an injury sufficient to trigger constitutional protections. The Fifth Circuit further noted that they could not recover for mental and emotional damages due to the lack of a physical injury in light of 42 U.S.C. § 1997e(e). *Id*. Mr. Douglas' claim that he is locked in a dayroom during the day without a toilet does not compare to the inmates in *Alexander* who were locked in a cell for twenty-four hours without a toilet.

In the present case, Mr. Douglas has access to a toilet in his cell—he just does not have access to one in the common areas. The facts as described by Mr. Douglas are not comparable to the facts in *Alexander* where relief was denied. In his objections, Mr. Douglas again complains that inmates must wait for extended periods of time before being allowed to return to their cells in order to use the toilet, but as before his complaints are not in the same league as *Alexander*. Moreover, Mr. Douglas has not shown harm. The facts as alleged do not rise to the level of a constitutional violation. The facts as alleged fail to state a claim upon which relief may be granted

and are frivolous in that they lack any basis in law and fact. The lack of toilets claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### F.      Extreme Cold

As a corollary to the extreme heat due to broken windows, Mr. Douglas also complains about extreme cold in the winter months. He once again notes that there are several hundred window panes in the housing area. He asserts that the windows are not properly sealed and the heating system is inadequate.

The Fifth Circuit has long held that exposure to excessive cold and wet conditions could set out a constitutional claim. *See Beck v. Lynaugh*, 842 F.2d 759, 760–61 (5th Cir. 1988). In *Beck*, inmates in segregation at the Retrieve Unit asserted that prison officials failed to replace windows that other inmates had broken out, causing the plaintiffs to be exposed to the elements, including cold, wind, and rain. Beck specifically alleged he was exposed to the elements from November 1984 through April 1985, including, during the winter months, bitter cold, wind, and rain. Rainwater allegedly collected and remained in puddles on the floor, and the he did not receive blankets or coats to cope with the subfreezing temperatures. The district court dismissed this claim, stating that there was no evidence that any harm was caused maliciously or deliberately by responsible persons and that prisoners had broken the windows, but the Fifth Circuit held that this was not the correct standard and that the plaintiff's allegations were sufficient to state a claim.

Unlike *Beck*, however, Mr. Douglas does not allege that the he was exposed to subfreezing temperatures because of the failure to repair broken windows. He does not allege that he was not provided blankets for warmth. He does not complain that he was cold and wet because of the rain. His generalized and conclusory allegations provide no basis for a finding that his temporary

21

exposure to the elements rendered the prison conditions cruel and unusual or that they contravened contemporary standards of decency. *See Rhodes*, 452 U.S. at 337; compare with *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987) (finding that conditions of confinement would be cruel and unusual if proven that inmate was forced to sleep on floor of extremely cold solitary confinement cell with rats crawling over him).

Mr. Douglas has alleged nothing more than generalized and conclusory assertions that are insufficient to show the requisite subjective knowledge of risk or to state an Eighth Amendment claim regarding the conditions of his confinement. *See Thomas v. Owens*, 345 F. App'x 892, 895 (5th Cir. 2009). He was given the opportunity to file an amended complaint to satisfy the shortcomings with respect to this claim, but his amended complaint contains the same vague and generalized claims as his original complaint. In his objections, he asserts that the cold issue is just as bad as the heat issue and that discovery will support his claims. Nonetheless, the facts as alleged are not in the same league as *Beck*. The facts as alleged fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. This claim should accordingly be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### G.    Chow Hall

Mr. Douglas next complains that the chow hall is contaminated and filthy. He asserts that roaches and birds infest the chow hall year-round. He adds that the eating utensils, plates, cups and spoons are chipped, broken and peeling. He alleges that food-borne pathogens are trapped in these damaged areas and inmates are forced to eat from them. He adds that food servers and food managers do not wear proper headgear and gloves. He asserts that utensils are not washed at the mandatory required temperature and that there is not enough detergent added to clean the utensils.

He adds that utensils are not allowed to drip dry before use. He stresses he can actually see food trapped under the peeling and bubbles in the utensils. He asserts that any free-world restaurant with these conditions would be permanently closed. He also claims he must walk in sewer water on the floor.

Mr. Douglas does not set forth any facts indicating that he has suffered any harm from these alleged conditions. As outlined below, the Fifth Circuit and other courts have considered a variety of cases which illustrate the type of conditions that result in a deprivation that are sufficiently serious to be considered cruel and unusual punishment. Mr. Douglas' alleged deleterious conditions do not state a deprivation sufficiently serious to meet the threshold set by these courts.

### 1.    Unsanitary conditions in the chow hall.

While there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298. Prison and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Brown v. Canteen, Inc.*, No. 09–cv–1549, 2009 WL 4506867 at *2 (W.D. La. Dec. 3, 2009) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986)); *Green v. Ferrell*, 801 F.2d 765 (5th Cir. 1986); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).

Mr. Douglas further complains that the utensils, plates, cups and spoons are not clean, that servers do not wear proper head gear, and that he was walks through standing puddles of dirty

water on the floor. Although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, Civ. Action No. 09–2823, 2009 WL 5178316 at *3 (E.D. La. Dec. 23, 2009); *see also Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir.1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir.1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

Furthermore, courts have held that without an allegation of resulting harm, complaints regarding food service practices "simply are not of a constitutional dimension," even where the plaintiff is requesting injunctive relief. Mr. Douglas does not allege that he has ever suffered harm or illness as a result of these allegedly unsanitary conditions. *See, e.g., Flowers v. Dent*, 21 F.3d 1109, 1994 WL 171707 (5th Cir. Apr. 29, 1994) (affirming dismissal as frivolous of complaint asserting that inmate did not receive adequate food and the kitchen facilities were unsanitary, where no harm was shown); *see Northup v. Bell*, 2012 WL 2814307 *5 (E.D. Tex. June 12, 2012); *see also, Encalade v. Stacks*, No. 9:04cv214, 2006 WL 1582468 (E.D. Tex. May 30, 2006), appeal dismissed (rejecting claim of unsanitary food service and procedures where inmate failed to show anything more than a general complaint that his stomach hurt); *accord Groves v. Gusman*, slip op. no. 09–7431, 2011 WL 1459775 (E.D. La. Mar. 4, 2011), adopted by 2011 WL 1463612 (E.D. La. Apr. 15, 2011) ("a minor sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation" particularly where inmate alleged no harm); *Jackson v. Griffith*, No. 1:93–CV–424, 1995 WL 21939 at *4–5 (E.D. Tex. Jan. 10, 1995), adopted by 1995

WL 313655 (E.D. Tex. Feb. 8, 1995) (claim regarding unsanitary food trays resulting from overcrowded conditions dismissed as frivolous).

Finally, mere negligence on the part of the prison officials in the way they manage the food services does not amount to a constitutional violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Mr. Douglas' claim is without merit.

### 2.	Pests and insects in the chow hall.

Mr. Douglas complains that roaches and birds are in the chow hall. The fact that pests are present does not amount to a constitutional violation. *See, e.g., Morrison v. Bench*, No. 3:09–CV–1003, 2009 WL 4858066 at *4 (N.D. Tex. Dec. 14, 2009); *Murray v. Edwards Cnty. Sheriff's Dep't*, 453 F.Supp.2d 1280, 1292 (D. Kan. 2006), aff'd, 248 F. App'x 993 (10th Cir. 2007); *Smith v. Barber*, 316 F.Supp.2d 992, 1029 (D. Kan. 2004); *Warren v. Stempson*, 800 F.Supp. 991 (D.D.C. 1992), aff'd, 995 F.2d 306 (D.C. Cir. 1993). Mr. Douglas' claim is without merit.

In his objections, Mr. Douglas repeats his claims about the chow hall, including complaints about filth, rust, deteriorating conditions, and pests, but he still has not alleged facts that support an Eighth Amendment violation. Mr. Douglas' claims about the chow hall fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The chow hall claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### H.	Unsafe Housing and Living Areas

Mr. Douglas finally alleges that the housing and living areas are unsafe. He explains that all iron fixtures and furniture have no sealant and paint in many areas; thus, inmates are exposed to rust. He adds that black spores and fungus exists in the living area ceiling cracks and showers. There are no climbing implements in the housing area to accommodate accessibility to top bunks.

He also complains about inmates smoking the synthetic drug K2. He finally complains that inmates are forced to live with other inmates who are known to be violent and assaultive. He asks that the Defendants be ordered to ensure that he is free from health and safety risks and assaults.

Mr. Douglas' pleadings wholly fail to show that he was confined under such extreme conditions as to violate the Eighth Amendment. *Compare Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004) (inmates held in cells "that were extremely filthy with chipped, peeling paint, dried fecal matter and food encrusted on the walls, ceilings, and bars, as well as water from flooded toilets and rain leaks"); *McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate's cell had sewage water and human waste back up into it, and because there was no bunk, inmate had to sleep on mattress placed on the floor). In the absence of any harm to Mr. Douglas, or, alternatively, in the absence of any showing that the conditions of confinement amounted to an "extreme deprivation," regardless of whether any harm had yet been suffered, Mr. Douglas' complaint regarding peeling and faded paint is without merit.

Similarly, Mr. Douglas' allegation that rust is present also fails. The presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action. *See, e.g., Maddox v. Gusman*, No. 14–2435, 2015 WL 1274081 at *3 (E.D. La. Mar. 19, 2015); *Simmons v. Gusman*, No. 14–1907, 2015 WL 151113 at *4 (E.D. La. Jan. 12, 2015); *Penn v. Jones*, No. 13–0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

Mr. Douglas also complains about inmates smoking the synthetic drug K2. The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's rights under the Eighth Amendment. First, a prisoner must prove objectively that he is "being exposed to unreasonably high levels of ETS [Environmental Tobacco Smoke]." *Helling*

*v. McKinney*, 509 U.S. 25, 35 (1993). In assessing the first factor, a court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm. *Id.* at 37. Second, the prisoner must show that prison authorities demonstrated "deliberate indifference" to his plight. *Id.* Vague and speculative allegations "that allowing other prisoners to smoke created an unhealthy environment did not sufficiently state a claim for exposure to environmental tobacco smoke." *Harrison v. Smith*, 83 F. App'x 630, 631 (5th Cir. 2003).

Mr. Douglas has presented only vague and conclusory claims about K2 being smuggled onto the unit and being smoked by other inmates. He has not satisfied the first *Helling* prong requiring him to show that he is being exposed to unreasonably high levels of ETS. Furthermore, prison rules specify that offenders found in possession of tobacco products or similar products may be charged with a disciplinary offense. *See* Offender Orientation Handbook, pages 21-22. He has not alleged facts showing that prison authorities demonstrated deliberate indifference to inmates possessing K2. He has not alleged facts showing a basis for an Eighth Amendment claim.

Mr. Douglas finally complains that inmates are forced to live with other inmates who are known to be violent and assaultive. Justice Thomas has observed that "prisons are necessarily dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making "some level of brutality . . . among prisoners [] inevitable no matter what the guards do." *Farmer v. Brennan*, 511 U.S. 825, 858-59 (1994) (Thomas, J., concurring) (citations and internal brackets omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, the standard to employ is whether prison

officials were "deliberately indifferent" to the safety needs of an inmate. *Id.* "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Mr. Douglas has gone no further than to observe the obvious that prisons are dangerous places. He has not, however, alleged facts showing that any of the defendants were deliberately indifferent to his safety. Moreover, as with so many of his complaints, he has not shown harm. His objections do not address the Magistrate Judge's discussion of the housing and living areas; thus, the findings are adopted by the court. Overall, the unsafe housing and living areas claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## I.    Totality of Conditions

As was previously noted, the Supreme Court has specified that conditions "alone or in combination" may amount to a constitutional violation. *Rhodes*, 452 U.S. at 347. Mr. Douglas erroneously complains in his objections that the Magistrate Judge did not acknowledge that the totality of conditions may amount to a constitutional violation. He further alleges in his objections that he has been subjected to these conditions for 37 years and counting, which would make him a member of the *Ruiz* class. The Fifth Circuit discussed the totality of the conditions in *Ruiz* while noting that *Rhodes* held "that the totality of the conditions of confinement does not offend the Constitution unless prison conditions are cruel and unusual, and not merely harsh or restrictive." *Ruiz v. Estelle*, 679 F.2d 1115, 1139-40 (5th Cir. 1982). The Court went on to discuss the remedial

measures required by the trial court, affirming some and reversing others. *Id.* at 1164-66. The parties subsequently entered into a consent decree as to the conditions of the prison system, which was approved by the trial court. *See Ruiz v. United States*, 243 F.3d 941, 943 (5th Cir. 2001). The totality of the conditions was addressed and corrected as a result of the *Ruiz* litigation. Mr. Douglas' claim in his objections that he has been subjected to unconstitutional conditions for 37 years and counting is inconsistent with the findings and conclusions set forth in *Ruiz*. His objections on this issue are disingenuous.

## IV.     Other Objections

Mr. Douglas makes a number of objections about matters that are not in response to the R&R. He mentions qualified immunity. Qualified immunity is an affirmative defense. *Ristow v. Hansen*, 719 F. App'x 359, 362 (5th Cir. 2018). The Defendants have not been ordered to answer, and they have not made an appearance raising the defense. It is not a part of this case, and Mr. Douglas' focus on the defense is misplaced.

Mr. Douglas complains that the R&R does not address his State claims. A district court may dismiss supplemental State law claims if all federal question claims that provided the court with original jurisdiction have been dismissed. *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992). The Magistrate Judge recommended that the federal question claims be dismissed; thus, the supplemental State law claims should be dismissed.

## V.      Conclusion

As previously explained, Mr. Douglas' amended complaint fails to state a claim upon which relief may be granted regarding the defendants in their official capacities for money damages pursuant to Fed. R. Civ. P. 12(b)(1). Mr. Douglas' request for prospective injunctive

relief against Defendant Cooper, in his official capacity, must be dismissed for lack of Article III standing. Mr. Douglas' claims against the defendants in their individual capacities must be dismissed because Mr. Douglas failed to allege any facts showing that any defendant was personally involved in any action or omission that deprived Mr. Douglas of his constitutional rights. Moreover, Mr. Douglas' specific complaints regarding the conditions of his confinement fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.

In conclusion, the Report of the Magistrate Judge, which contains her proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections raised by Mr. Douglas to the Report, the court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and Mr. Douglas' objections are without merit. Therefore, the findings and conclusions of the Magistrate Judge are adopted as the findings and conclusions of the court. It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

**So Ordered and Signed**
Nov 14, 2018

_____
Ron Clark, Senior District Judge